IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-00032-D

**Michael Wayne Pearce,**

        Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

        Defendant.

**Memorandum & Recommendation**

Plaintiff Michael Wayne Pearce instituted this action on August 24, 2015, to challenge the denial of his application for social security income. Pearce claims that Administrative Law Judge Catherine Harper erred in her determination by finding that he could return to his past work, by failing to find his fecal incontinence and shortness of breath were severe impairments, and by conducting an improper credibility analysis. Both Pearce and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 23, 25

After reviewing the parties' arguments, the court has determined that ALJ Harper reached the appropriate decision. The court finds that Pearce's functional limitations were sufficiently represented at all steps of the sequential evaluation process. Further, his shortness of breath and fecal incontinence were not severe impairments and ALJ Harper conducted a proper review of his credibility. Therefore, the undersigned magistrate judge recommends that the court deny Pearce's motion, grant the Commissioner's motion, and affirm ALJ Harper's decision.[1]

---

[1] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).

**I.     Background**

On September 28, 2009, Pearce filed applications for supplemental security income and disability insurance benefits. Both applications alleged a disability that began on April 30, 2009. After his claims were denied, the Appeals Council remanded the matter for further consideration. Pearce appeared before ALJ Harper for a hearing to determine whether he was entitled to benefits. ALJ Harper determined Pearce was not entitled to benefits because he was not disabled. Tr. at 23–34.

ALJ Harper found that Pearce had the following severe impairment: mental impairment variably assessed as personality disorder, obsessive compulsive disorder, kleptomania, depressive disorder, anxiety disorder, or adjustment disorder. *Id.* at 26. ALJ Harper also found that this impairment, alone or in combination with his non-severe impairments, did not meet or equal a Listing impairment. *Id.* at 27. ALJ Harper then determined that Pearce had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitation: he is limited to work in a low stress job, defined as having only occasional changes in the workplace. *Id.* at 28.  ALJ Harper also concluded that Pearce was capable of performing his past work as a store laborer and as a store manager. *Id.* at 32. Alternatively, ALJ Harper found that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. *Id.* at 32–33. These include bagger, sales clerk, and cook helper. *Id.* at 33. Thus, ALJ Harper found that Pearce was not disabled. *Id.*

After unsuccessfully seeking review by the Appeals Council, Pearce commenced this action by filing a complaint pursuant to 42 U.S.C. § 405(g) on August 24, 2015. D.E. 6.

## II. Analysis

### A. Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B. Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing

3

whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## C. Medical Background

Pearce suffers from a number of mental health impairments. He has received treatment from Mark Boyd, a clinical social worker, for his compulsion to steal. Tr. at 158, 724, 729. In January 2008, Boyd's diagnostic impression of Pearce was obsessive compulsive personality disorder. *Id*. at 724. Nurse practitioner Judith Perry noted that Pearce had diagnoses of obsessive compulsive disorder and kleptomania. *Id*. at 616. She prescribed medications for this and for his anxiety. *Id*. at 617. Providers diagnosed Pearce with an enlarged prostate in May 2008 after he reported urinary urgency and frequency. *Id*. at 611. Pearce thereafter reported to Boyd that he no longer had a compulsion to steal, and Boyd directed that Pearce should contact him if he desired to resume therapy. *Id*. at 717.

Pearce reported incontinence in March 2009. *Id*. at 622, 714. He resumed therapy with Boyd in July 2009 after stealing from his employer. *Id*. at 706. Pearce reported an increase in obsessive compulsive behaviors, and providers increased his medication. *Id.* at 703–05. Boyd's treatment notes from October 2009 and November 2009 observed that Pearce appeared depressed. *Id*. at 695–96, 701.

Dr. Mary Hill evaluated Pearce on January 20, 2010. *Id*. at 678–85. She noted he appeared anxious, irritable, and tense. *Id.* at 682. She found that he had fair insight but that he had mildly impaired judgment. *Id*. at 683. Dr. Hill diagnosed Pearce with OCD; depression, not otherwise specified; rule out bipolar disorder; kleptomania; and personality disorder, not otherwise specified. *Id*. at 685. She prescribed medications. *Id*. at 684–85. As he reported a

4

worsening of depressive symptoms in February 2010, Dr. Hill prescribed Lithium. *Id.* at 670, 673. She increased the Lithium dosage the following month. *Id.* at 658–59, 662. She also advised Pearce that his mood needed to stabilize prior to starting Chantix, a smoking cessation aid. *Id.* at 662.

Dr. Daniel Gottovi began treating Pearce in March 2010. *Id.* at 664. Treatment records around this time note that Pearce appeared depressed, anxious, and ill, and Dr. Gottovi prescribed Lithium and Prozac. *Id.* at 743, 747–48, 763, 808, 834. Pearce has also complained of shortness of breath and headaches. *Id.* at 733, 645. Dr. Gottovi diagnosed Pearce with COPD, depressive disorder, anxiety disorder, and incontinence. *Id.* at 762.

Pearce reported that his fecal incontinence increased with stress. *Id.* at 813, 826. Dr. Gottovi prescribed bentyl and also recommended dietary changes. *Id.* at 26, 804. Providers have also advised Pearce to discontinue smoking. *Id.* at 842.

Pearce continued to receive treatment from Boyd, who noted he appeared minimally to moderately depressed. *Id.* at 649, 651. In September 2010, Boyd remarked that Pearce's obsessive compulsive symptoms increased since he began taking a full course load in college. *Id.* at 646. Diagnoses included OCD; depression, not otherwise specified; rule out bipolar disorder; and kleptomania. *Id.*

In November 2010, Dr. Gottovi noted that Pearce continued to experience problems with depression and anxiety as well as incontinence. *Id.* at 741. He also noted Pearce's slow mobility. *Id.* at 743. Dr. Gottovi assessed "multiple problems of severe depression, chronic anxiety, COPD, [and] urinary and fecal incontinence" which he concluded made even part-time work impossible. *Id.* at 731, 744. In March 2011, Dr. Gottovi noted Pearce had decreased breath

5

sounds and slow mobility. *Id*. at 747. In July 2011, Dr. Gottovi restarted Pearce on Chantix to assist him in quitting smoking. *Id*. at 768.

Dr. Anthony Carraway performed a consultative examination of August 23, 2011. *Id*. at 751–55. He concluded that Pearce had no impairment in attention or concentration and that he could perform simple, routine tasks. *Id*. at 754. He further opined that Pearce's stress tolerance was mildly to moderately impaired and that his short-term memory was moderately impaired. *Id*. Dr. Carraway also found that Pearce had mild to moderate limitations in his abilities to interact appropriately with others and to respond appropriately to usual work situations and changes. *Id*. at 754–55. Dr. Carraway diagnosed Pearce with kleptomania and anxiety disorder, not otherwise specified. *Id.*

In February 2012, Dr. Gottovi stated that Pearce was appropriately medicated for his anxiety and depression but that he continued to have an anxious and depressed affect. *Id*. at 756. Dr. Gottovi reaffirmed this statement in April 2013. *Id*. at 760.

In April 2012 and August 2012, Pearce reported incidents of fecal incontinence to Dr. Gottovi. *Id*. at 779, 786. Dr. Gottovi noted Pearce engaged in self-destructive behavior and diagnosed Pearce with bipolar disorder. *Id.* at 787, 802. In April 2013, Pearce reported less incidents of bowel distress following the resolution of his wife's illness. *Id*. at 813. The following month he told Dr. Gottovi that he had increased incidents of shortness of breath and again reported fewer bowel issues which he attributed to being under less stress. *Id*. at 819, 833.

Dr. Gottovi issued a Medical Source Statement on August 23, 2013. *Id.* at 860–62. He opined that Pearce could occasionally lift less than five pounds; he could sit and stand or walk two hours in an eight hour workday; he would be absent from work three or more time per month because of his impairments and treatment; and he would be off-task and/or require unscheduled

6

breaks for 20 percent of the time. *Id*. at 860–61. On August 4, 2014, Dr. Gottovi reiterated that Pearce is unable to work due to his many health problems. *Id.* at 864.

**D.     Past Work**

Pearce first argues that ALJ Harper erred in formulating the RFC and in presenting hypothetical questions to the Vocational Examiner ("VE"). Pearce submits that his moderate limitations in concentration, persistence, or pace were not reflected in a limitation to "low stress jobs, defined as having only occasional changes in the workplace." Tr. at 28, 89. The Commissioner contends that ALJ Harper properly determined that Pearce was able to work despite this limitation. The court finds that ALJ Harper sufficiently accounted for the moderate limitation in concentration, persistence, or pace at the sequential steps of the disability evaluation.

In support of his argument, Pearce cites to *Mascio v. Colvin*, where the Fourth Circuit held it is reversible error for an ALJ to present RFC findings to a VE in the form of a hypothetical if the ALJ "fail[s] to account for a relevant factor when determining [the plaintiff's RFC]." 780 F.3d 632, 638 (4th Cir. 2015). The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, the Fourth Circuit emphasized that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

7

The Commissioner asserts that *Mascio* is distinguishable from the present case for several reasons. First, unlike *Mascio*, where the ALJ's hypothetical question was silent on the claimant's mental limitations, ALJ Harper's hypothetical question to the VE included Pearce's nonexertional limitation. She further contends that ALJ Harper explained why Pearce's moderate limitation did not affect his ability to work by noting that he drove long distances, which requires a high level of concentration, and that he had no impairment in concentration during his September 2011 evaluation. Tr. at 27. Finally, the Commissioner maintains that the RFC determination and hypothetical question match, where as in *Mascio* they did not.

The question presented is whether the limitation to low stress job, defined as having only occasional changes in the workplace, adequately reflects a moderate limitation in concentration, persistence, or pace. Here, unlike *Mascio*, ALJ Harper presented a hypothetical question to the VE which not only matched the RFC but also included Pearce's non-exertional limitation. Both the RFC and hypothetical question restricted Pearce to low stress work, defined as having only occasional changes in the workplace. This is sufficient to reflect a moderate limitation in concentration, persistence, or pace found at step three. *See Eastwood v. Colvin*, No. 3:15-cv-156, 2016 WL 805709, at *4 (E.D. Va. Feb. 12, 2016), *adopted by* No. 3:15-cv-156, 2016 WL 881123 (E.D. Va. Mar. 1, 2016) (distinguishing *Mascio* where RFC and hypothetical question limited plaintiff to "few workplace changes"). *See also Robbins v. Comm'r, Soc. Sec. Admin.*, No. 14-cv-3326, 2015 WL 8490918, at *2 n.1 (D. Md. Dec. 10, 2015) (noting that, in many cases, a restriction to work that is low stress adequately addressed a moderately impaired ability to sustain concentration, persistence, or pace). *But see Desilets v. Colvin*, No. 2:14-cv-01693, 2015 WL 5691514, at *5 (D.S.C. Sep. 15, 2015) (RFC that limited claimant to simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting did

not sufficiently address the claimant's limitations in concentration, persistence, or pace as they relate to the RFC ); *Hagerdorn v. Colvin*, No. 2:12–cv–29–RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, accounted for some of claimant's mental limitations, such as the ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration).

Moreover, even if the RFC determination and hypothetical questions to the VE did not satisfy the requirements of *Mascio*, ALJ Harper offered a explanation for failing to find that Pearce was further restricted. She noted that, during the relevant period, Pearce had successfully completed a semester with a full course-load at a community college while also working part-time. Tr. at 29. She remarked that both this fact and the overall record undermined his allegations as to the severity of his symptoms. *See Ledbetter v. Colvin*, No. 15-cv-714, 2016 WL 1258473, at *6 (D. Md. Mar. 31, 2016) (remand under *Mascio* not required where ALJ sufficiently explained that moderate limitation in concentration, persistence, or pace did not translate into a limitation in claimant's RFC where claimant was able to function successfully as a full-time college student).

ALJ Harper properly accounted for Pearce's moderate limitations in concentration, persistence, or pace at the subsequent steps of the sequential evaluation. Additionally, she explained her reasons why Pearce's limitations in this functional area did not translate into greater restrictions than she assessed in formulating the RFC. Consequently, *Mascio* does not require remand in this instance.

### E. Impairment Severity

Pearce next asserts that ALJ Harper erred in failing to find his fecal incontinence and shortness of breath ("SOB") to be severe impairments at step two. The Commissioner correctly maintains that ALJ Harper properly concluded that these conditions posed no more than a minimal impact on Pearce's ability to do basic work activities.

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality ... that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996).[2] A plaintiff bears the burden of proving severity at step two. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see also Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard ....") (internal citation omitted). To carry that burden, a plaintiff "must provide medical evidence showing ... an impairment(s) and how severe it is ...." 20 C.F.R. § 416.912(c). *See also Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on medical factors alone ...."); *Washington v. Astrue*, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("A severe impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." (internal quotation marks omitted)); *Flint v. Sullivan*, 743 F. Supp. 777, 782 (D. Kan. 1990) ("A claimant's statements

---

[2] Applicable regulations further identify "basic work activities" as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

regarding the severity of an impairment are not sufficient."), *aff'd*, 951 F.2d 264 (10th Cir. 1991).

ALJ Harper's decision indicates that she considered these conditions. She noted that Pearce suffers from fecal incontinence for which Dr. Gottovi prescribed medication. Tr. at 26. She further observed that neither laboratory testing or examination identified the source of his symptoms and that Dr. Gottovi did not refer Pearce to a specialist for additional treatment of this condition. *Id*. She also remarked that the fecal incontinence resolved after he reduced his stress and that Pearce was not currently taking any medication for this condition. *Id*. Finally, ALJ Harper stated that despite this condition, Pearce was able to complete a full semester of college coursework while working part-time. *Id*. at 26–27.

Although Pearce testified that he experienced fecal incontinence 4–5 times per week even when he took medication, and that the condition is unpredictable, such evidence does not establish that it is a severe impairment. *Id*. at 74. Despite having this condition, he was able to take a college courses and he was able to work during this period. *Id*. at 27. This indicates that his fecal incontinence did not significantly limit his ability to do basic work activity. Additionally, Dr. Gottovi treated the condition conservatively, only prescribing medication for it, and did not refer Pearce to a specialist. Pearce testified that medication provided some help. *Id*. at 75. Although he testified that Dr. Gottovi did not recommend dietary changes, the record demonstrates that Dr. Gottovi instructed Pearce to make dietary changes to alleviate this problem. *Id*. at 75, 804. Moreover, ALJ Harper noted that the treatment record reflects only intermittent complaints of fecal incontinence. *Id.* at 31. For these reasons, ALJ Harper properly determined that his fecal incontinence was not a severe impairment.

ALJ Harper also noted that providers diagnosed Pearce with COPD and that he complained of shortness of breath with minimal exertion. *Id*. at 27. She remarked, however, that physical examination revealed good breath sounds and that other clinical signs of respiratory insufficiency were absent. *Id*. As he was only once prescribed medication for this condition, she found his COPD was well-controlled and not a severe impairment. *Id*. Although Pearce stated that he used an inhaler 3–4 times per day, *id*. at 81, he acknowledged he continued to smoke cigarettes, up to one and one-half packs per day, *id*. at 29. Certainly his use of tobacco plays a role in his shortness of breath. As with his fecal incontinence, Pearce was able to work despite his respiratory issues, suggesting they are not so severe so as to preclude even basic work activity. For these reasons, the court finds that ALJ Harper did not err in concluding this is not a severe impairment.

Moreover, any error in failing to find these impairments severe, without more, would not require remand. The failure to find an alleged impairment severe at step two is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis. *See, e.g., Winston v. Astrue*, No. 4:11-cv-107-D, 2012 WL 4086448, at *4 (E.D.N.C. Sept. 17, 2012) (noting that "[a]n ALJ's erroneous failure to find an impairment ... severe at step two of the sequential analysis is harmless error if other impairments are found to be severe and the omitted impairment is considered at subsequent steps."); *Atkinson v. Astrue*, No. 5:10–CV–298–FL, 2011 WL 3664346, at *8 (E.D.N.C. July 20, 2011) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009)), *adopted by* 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011). Here. ALJ Harper specifically remarked that she is required to consider all impairments, including non-severe ones, in making the RFC determination Tr. at 25.

Because Pearce has failed to establish that ALJ Harper erred in finding these conditions to be non-severe impairments, his argument on this issue lacks merit.

**F.    Credibility**

Pearce next asserts that ALJ Harper inappropriately assessed his credibility. The Commissioner argues, and the court agrees, that substantial evidence supports ALJ Harper's credibility findings.

The Social Security Regulations provide the authoritative standard for the evaluating subjective complaints of pain and symptomology. *See Craig v. Chater,* 76 F.3d 585, 593 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). Under the Regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ

13

"must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *2.

Here, ALJ Harper found that Pearce was not entirely credible regarding his symptoms. Tr. at 29. Pearce stated that his depression was the primary reason he could not work, but that he had received no mental health treatment since his previous hearing over two years earlier. *Id*. A reasonable inference could be drawn that his impairments are not as severe as he alleges. Although Pearce also alleged he did not have the financial resources for medication, ALJ Harper found he not only had earning from employment in 2009 and 2010 but also noted that he continued to use his resources for cigarettes. *Id*. at 30–31. She further remarked that Pearce's ability to take college courses while maintaining part-time work discredited his claims disability. *Id*. at 31.

Pearce submits that he should not be discredited based on his limited financial resources, which impact his ability to get treatment. He also contends that he has tried to stop smoking but that his provider would not prescribe a smoking cessation aid due to its potential effect on his mental health conditions. However, the record demonstrates that Pearce received multiple prescriptions for smoking cessation aids. *Id.* at 619–20, 623–24, 626, 634–35, 637, 660–62. On one occasion, Dr. Hill noted Pearce's mood needed to be stable prior to using the smoking cessation aid because it could cause psychiatric symptoms including depression and anxiety. *Id*. at 662. Presumably, then, his mental health condition stabilized as he subsequently used the smoking cessation aid prescriptions.

Additionally, purchasing cigarettes is a proper consideration when a claimant avers an inability to afford treatment of medication. *See Buckley v. Comm'r of Soc. Sec.*, No. 1:14–cv–00124, 2015 WL 3536622, at *21 (D.S.C. June 5, 2015) (finding that the ALJ properly "cited

14

Case 2:15-cv-00032-D   Document 28   Filed 07/20/16   Page 14 of 16

evidence to suggest that [the claimant's] testimony was not fully credible regarding alleged financial barriers to treatment," including the ALJ's notes that the claimant "smokes cigarettes daily despite their associated financial costs") (internal quotes omitted). Additionally, the Commissioner points out that Dr. Gottovi made no changes in Pearce's medications in two years, suggesting that they were effective to treat his symptoms. Finally, as noted above, taking college classes while working part-time is inconsistent with the severity of the symptoms Pearce alleges. In sum, substantial evidence supports ALJ Harper's determination that Pearce is not fully credible.

Mindful that it is not the role of the reviewing court "to re-weigh conflicting evidence, make credibility determinations, or substitute ... [its] judgment for that of the Secretary[,]" *see Craig*, 76 F.3d at 589, and finding that ALJ Harper's credibility findings having support in the record, Pearce's argument on this issue lacks merit. *See Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (observing that an ALJ's credibility determination "should be accepted by the reviewing court absent exceptional circumstances.") (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*, No. 5:11–cv–63, 2012 WL 3542536, at *9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were neither unreasonable nor contradicted by other findings).

### III. Conclusion

For the forgoing reasons, the court recommends that the court deny Pearce's Motion for Judgment on the Pleadings (D.E. 23), grant Colvin's Motion for Judgment on the Pleadings (D.E. 25), and affirm the Commissioner's finding.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel. Each party shall

have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Owen v. Collins***, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: July 20, 2016

                                                                                        _____
                                                                                        ROBERT T. NUMBERS, II
                                                                                        UNITED STATES MAGISTRATE JUDGE